UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| RODNEY SIMMONS JR., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-272-JEM |
| | ) | |
| UNITED STATES STEEL | ) | |
| CORPORATION, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment of Defendant, United States Steel Corporation [DE 29], filed March 21, 2019.

**I.**    **Procedural Background**

On June 26, 2017, Plaintiff Rodney Simmons Jr. filed a Complaint alleging that Defendant United States Steel Corporation violated Title VII of the Civil Rights Act of 1964, as amended. He claims that his manger discriminated against him on the basis of his race, that he was retaliated against, and that he experienced a hostile work environment. On March 21, 2019, Defendant filed the instant Motion for Summary Judgment. Plaintiff filed a belated response on May 3, 2019, and on May 29, 2019, Defendant filed a reply.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**II.**    **Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party

to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

## IV. Material Facts[1]

Plaintiff, who is black, took a job as a crane operator with Defendant U.S. Steel in 2012, and continues to be employed there in the same role. The section of the mill for which Plaintiff works typically operates only day shifts. Because it only operates day shifts, unlike other sections, it has never had flexible schedules available for its employees. Plaintiff worked with crane operators with several different levels of training and qualification, which qualified them for different types of jobs. He is a Labor Grade 2 Crane Operator.

Plaintiff's unit coordinator was the manager who was responsible for scheduling. Plaintiff described him as intimidating and aggressive, using profanity in front of employees, and frequently yelling at or in front of people of all different races. Plaintiff's manager explained that he tried to schedule employees for forty hours of work in a week if they requested days or shifts off before he prepared a schedule, but that if the time off request occurred after the schedule had been posted, he typically did not reschedule them. There was no guaranteed overtime in Plaintiff's section, although it was sometimes available. If the need for it arose in advance, it would be put on the schedule. Other times, the need for overtime would come up last minute. Plaintiff's manager would typically first offer the overtime to employees with the appropriate qualifications who were already working and therefore available for him to speak with. If none of them were available, he would then call employees who were qualified to do that particular work from the specific overtime equalization group, as determined by the Overtime Agreement between U.S. Steel and the Union. Sometimes shift managers also assigned unscheduled overtime hours. Plaintiff worked the day shift, and

---

[1] The Court notes that these facts are taken primarily from Defendant's Statement of Undisputed Material Facts. Although Plaintiff's response brief contains a section titled "Statement of Genuine Disputes," the Court notes that it does not 'identif[y] the material facts that the party contends are genuinely disputed" as required by Northern District of Indiana Local Rule 56-1, but merely includes 4 assertions of Plaintiff's claims and arguments.

therefore was not often working when unscheduled overtime needs arose. Even so, he was offered and worked many overtime hours. Between 2013 and June 2015, Plaintiff submitted written requests for overtime, and used the Union process for contesting the distribution of overtime, but never mentioned a belief that he was being denied overtime because of his race. He was then ineligible to work overtime hours for several time periods, and did not use the overtime dispute process from August 11, 2015, through June 6, 2016. During 2015 and 2016, there were weeks in which he received more overtime than other employees in his overtime equalization group. He had the second highest number of overtime hours within his group from the time period of January 1, 2016 through May 3, 2016.

In January 2016, Plaintiff's manager threw a chair from the work shanty into the garbage because he determined that it was unsafe. Two employees retrieved the chair and placed it back in the work shanty before Plaintiff began work that day. Plaintiff's manager saw Plaintiff sitting in the chair later that day and told him that it needed to be placed back in the garbage. There were other seating options available in the work shanty.

Between 2014 and March 2016, Plaintiff filed fifteen grievances with his Union about work occurrences he was unhappy with, but none of them alleged discrimination based on race or other protected status. On June 6, 2016, Plaintiff filed an EEOC charge complaining of race discrimination and retaliation.

## V. Analysis

Defendant moves for summary judgment on Plaintiff's claims for discrimination and retaliation under Title VII of the Civil Rights Act, arguing that some of Plaintiff's claims are procedurally barred and that Plaintiff cannot establish a prima facie case of discrimination. Plaintiff

argues that there are genuine issues of material fact.

Title VII prohibits discrimination "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to make a successful claim for discrimination pursuant to the burden-shifting *McDonnell Douglas* framework, a Title VII plaintiff must first "establish[] that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he was subjected to an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably by the employer." *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547-48 (7th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)) (other citations omitted); *see also Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) ("[T]he well-known and oft-used *McDonnell Douglas* framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases."). Once the plaintiff has established this prima facie case, it "creates a presumption of discrimination, and the 'burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its employment decision." *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017) (quoting *McDonnell Douglas*, 411 U.S. at 802). Then "the burden shifts back to the plaintiff, who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Id.*, quoting *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

In its summary judgment analysis, the Court must consider whether "the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . .or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole,

rather than asking whether any particular piece of evidence proves the case by itself." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). Accordingly, "the sole question that matters" is "[w]hether a reasonable juror could conclude" that Plaintiff would have been treated differently if "he had a different ethnicity, and everything else had remained the same." *Ortiz*, 834 F.3d at 764 (citing *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997).

There is no dispute in this case that Plaintiff belongs to a protected class by virtue of his race. Defendant argues that Plaintiff cannot establish that he suffered an adverse employment action or that similarly situated employees were treated more favorably. In addition, Defendant argues that it is entitled to summary judgment on claims that are barred by the applicable statute of limitations and those that were not included in the EEOC charge.

A.  Adverse Employment Action

Defendants argue that Plaintiff has not identified any adverse employment action that he suffered. Plaintiff asserts that he was shorted overtime hours.

To be considered materially adverse, an employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (quoting *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000)). "[A]n adverse employment action need not be quantifiable in terms of pay or benefits," but "not everything that makes an employee unhappy is an actionable adverse action." *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996)). Although determining whether a particular employment action is materially adverse will depend on the unique circumstances of each case, the Seventh Circuit Court of Appeals has

7

identified three general categories of actionable, materially adverse employment actions: (1) an employee's compensation or benefits are diminished or he is fired; (2) a nominally lateral transfer or other change in the job significantly reduces his career prospects; or (3) work conditions are changed so as to subject him to "a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009) (citing *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004)); *see also Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002) (providing that the last category includes "cases of harassment-mistreatment of an employee by coworkers or supervisors that is sufficiently severe to worsen substantially his conditions of employment as they would be perceived by a reasonable person in the position of the employee") (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998); *Hilt-Dyson*, 282 F.3d at 462-63).

"When overtime pay or premium pay is a significant and expected part of an employee's annual earnings, denial of such pay may constitute an adverse employment action." *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) (citing *Henry v. Milwaukee Cty.*, 539 F.3d 573, 585–86 (7th Cir.2008); *Lewis v. City of Chicago*, 496 F.3d 645, 653–54 (7th Cir.2007)). In this case, Plaintiff alleges that Defendant shorted him hundreds of hours of overtime and claims that other employees were offered more overtime than he was. Defendant argues that Plaintiff has not identified how much overtime he is claiming he was shorted, that he was available and qualified to perform the overtime work he claims he was not assigned, or whether people outside of his race were assigned to that overtime.

In his response to the motion for summary judgment, Plaintiff asserts that he was shorted hundreds of hours in overtime and that he "provided to US Steel at least an account of 106 hours of

8

falsely refused overtime." In support of this statement, which is presented without other explanation or argument, Plaintiff cites to Exhibit H, a single-page document describing hours paid to Plaintiff from July 5 through July 11, 2015. It reflects that Plaintiff was scheduled for 32 hours and was paid for 32 hours of work, and that he was apparently offered 8 overtime hours by his supervisor on July 11, which he did not work. It also includes handwritten notes, apparently by Plaintiff, indicating that on July 9 Plaintiff attended 2.5 hours of pain management at the company doctor in addition to the time worked, so that those 2.5 hours should paid at the overtime rate, and that on July 11, 2015, he "didn't give away [overtime] that was part of my 40 hrs scheduled also since you want to charge it as refused hrs I need to get a copy of all refused hrs that match the sheet, all 106.6 hrs." [DE 35-8].

Other than alleging that he was improperly "charged" overtime as "refused," the exhibit does not include any indication Plaintiff was not offered overtime, that others were offered overtime instead of Plaintiff, or that he received significantly less overtime than others who performed the same job functions as he did. The single exhibit with his own handwritten notations is inadequate to show that he was denied overtime in a manner that could be considered an adverse employment action. *See Conley v. Vill. of Bedford Park*, 215 F.3d 703, 711-12 (7th Cir. 2000) ("Mr. Conley fails to come forward with any evidence to substantiate his allegations. He does not set forth any specific times that the Village gave others overtime opportunities, but denied the same to him. As well, he does not proffer any evidence to show that, on par, he did not receive the same number of overtime opportunities as others. Mr. Conley merely makes the unsupported allegation that he was denied overtime on the basis of his alcoholism. Such a statement is wholly inadequate to make out a prima facie case of discrimination.").

Plaintiff argues that other instances of discrimination support his claim of unfair overtime

allegations, and cites generally to a number of exhibits, including his deposition and an out-of-context portion of a deposition of an unidentified witness stating that the deponent believed that the allocation of overtime was unfair. Statements for which Plaintiff has not provided any evidentiary support cannot be used to counter a motion for summary judgment. *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 812 (7th Cir. 2011) ("It is well settled that conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact.") (quoting *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir.2002)); *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.*, 533 F.3d 555, 562 (7th Cir. 2008) ("The district court cannot be expected to search through the entire record for evidence that may support a party's contentions; a party must point to specific evidence that creates a genuine issue of material fact for trial. Furthermore, . . . [the plaintiff]'s proffered statements . . . were entirely without foundation, . . . based entirely on speculation and hearsay. The district court correctly gave no credence in its opinion to such conclusory and unsupported assertions.") (citing Fed. R. Civ. P. 56(e)); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898-99 (7th Cir. 2003) ("[The Seventh Circuit] ha[s] repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them. . . .This means that the question before us is whether the evidence [the plaintiff] properly presented to the district court can support . . . his . . . discrimination claim or his retaliation claim.").

As Defendant argues, Plaintiff has not identified dates during which he was denied overtime that would have been otherwise available to him or that similarly-qualified workers of a different race were assigned that overtime in his stead. Plaintiff's unsupported allegation that the allocation

of overtime was unfair is insufficient to survive summary judgment. *See, e.g.*, *Bennett v. Potter*, No. 09 C 2276, 2011 WL 1231166, at *8 (N.D. Ill. Mar. 30, 2011) ("[Attached] records also demonstrate that information concerning overtime pay is available, and Plaintiff could have sought it out to rebut summary judgment-but she has not done so. Plaintiff's vague allegation that she was denied overtime 'four or five' times does not create a genuine issue of material fact suitable to survive summary judgment."). Plaintiff has not identified a genuine issue of material fact regarding whether he suffered an adverse employment action sufficient to support an allegation of discrimination.

B.  Hostile Work Environment

Defendant also moves for summary judgment on Plaintiff's claim for a hostile work environment. Defendant argues that Plaintiff's hostile work environment claims are barred because they were not included in the EEOC Charge and that even if it is not barred, Plaintiff cannot show that his work environment rose to the level of hostile.

"Title VII prohibits the creation of a hostile work environment. . . . In order to prevail on such a claim, a plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014) (internal quotation marks and citations omitted). To make this determination on summary judgment, courts consider "the surrounding circumstances, including whether the discriminatory conduct was frequent or severe; whether the conduct was physically threatening or humiliating; and whether the conduct unreasonably interfered with her work performance. . . . Title VII is not a general code of workplace civility, nor does it mandate 'admirable behavior' from employers." *McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 624 (7th Cir. 2004) (citing *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001). Therefore, a claim for a hostile work environment "requires

11

proof of four elements: (1) the plaintiff's workplace was both subjectively and objectively offensive; (2) the plaintiff's [protected status] was the cause of the harassment; (3) the harassment was severe or pervasive; and (4) there is a basis for employer liability." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016).

It is not entirely apparent from Plaintiff's response brief what characteristics he is claiming make the work environment hostile in this case. He refers to a "racially charged environment" and cites generally to his deposition in support of his assertions that black employees were not treated as well as non-black employees and that members of management would sing rap lyrics in front of Plaintiff. These generic, unsupported assertions are insufficient to create a genuine issue of material fact as to whether the work environment was hostile. *See, e.g., Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898-99 (7th Cir. 2003). He also refers generally to a complaint about his chair. In his deposition, he explained that there was a chair he liked to use that his supervisor threw in the garbage at some point when Plaintiff was not working. After the chair was retrieved from the garbage and Plaintiff's supervisor saw Plaintiff sitting in it, the supervisor instructed Plaintiff to place it back in the garbage, despite Plaintiff's protestations that there was nothing wrong with the chair. Pl. Dep. 93-95, 100-102 [DE 32-3]. Plaintiff testified that he believed the supervisor threw away the chair to harass Plaintiff. Pl. Dep. 101:15-21. Even setting aside the non-discriminatory reasons given by the supervisor for disposing of the chair in question, Plaintiff does not allege that all seating options were removed or that he was rendered unable to do his job. A single instance of the loss of a favorite chair is certainly not enough to rise to the level of a hostile work environment. *See Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013) ("Title VII prohibits the creation of a hostile work environment. In such cases, we have held, the plaintiff must show that the work environment

was so pervaded by discrimination that the terms and conditions of employment were altered."). To the extent that Plaintiff is alleging that his supervisor's aggressive behavior, yelling, and use of profanity make the environment hostile, he does not allege that the behavior included racially-based comments, nor that much of his behavior was directed specifically at Plaintiff. "Title VII does not impose a flat ban on all harassment. It prohibits harassment that discriminates against an individual "because of such individual's [protected characteristic]," such as sex or race. *Smith v. Rosebud Farm, Inc.*, 898 F.3d 747, 750 (7th Cir. 2018) (quoting 42 U.S.C. § 2000e–2(a)(1)) (other citations omitted). Viewing the facts in the light most favorable to Plaintiff, no reasonable trier of fact "could find that plaintiff was harassed, that []he was harassed because of h[is] [race], and that the conduct was severe or pervasive enough to create a subjectively and objectively hostile work environment." *Haugerud*, 259 F.3d at 693.

Furthermore, as Defendant argues, it appears that Plaintiff's claim for a hostile work environment is barred because it is beyond the scope of the EEOC charge. "[C]laims brought in judicial proceedings must be within the scope of the charges filed with the EEOC." *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005). Plaintiff's EEOC charge only includes the claim of "denial of a flexible work schedule and overtime" as compared to "less senior non-Black individuals" and the statement, "I believe I have been discriminated (sic) because of my race, Black, and in retaliation for engaging in protected activity." [DE 1-1]. As Defendant argues, the charge does not include any allegation of a hostile work environment.

    C.    Retaliation

Defendant also moves for summary judgment on Plaintiff's claim for retaliation. "To establish retaliation under the direct method, a plaintiff must present evidence, direct or

circumstantial, showing that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal connection exists between the two." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citing *Burks v. Wisc. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir.2006)). "A plaintiff demonstrates a causal connection by showing that the defendant 'would not have taken the adverse ... action but for his protected activity,'" and "[i]f a plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate." *Baines v. Walgreen Co.*, 863 F.3d 656, 661-62 (7th Cir. 2017) (quoting *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015); *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013)).

Defendant argues that Plaintiff cannot identify any protected activity to support a retaliation claim. In his deposition, Plaintiff asserted that his retaliation claims were based on the filing of grievances in November and December of 2014, Pl. Dep. 72:6-73:2 [DE 32-3], and mentioned that he believed his supervisor threw away his chair in retaliation for his filing grievances, Pl. Dep. 102: 19-103:5 [DE 32-3], but also testified that his grievances did not include any claim that he was being discriminated against because of his race. In his response brief, Plaintiff argues that his supervisor's scheduling of a junior co-worker to work a holiday rather than granting Plaintiff's request to work that day was retaliation for a complaint he filed on February 26, 2016. Plaintiff does not cite to a particular document in support of this contention, so it is not immediately apparent what complaint Plaintiff is referring to. Defendant assumes that he is referring to a five-page letter to Plaintiff's union representative, included as part of a 79-page exhibit of an assortment of documents identified as "received from the U.S. Equal Opportunity Commission in response to my Freedom of

Information Act (FOIA) Request." Plaintiff asserts, without evidence or explanation, that U.S. Steel received the February 2016 letter, apparently because the civil rights committee on which the letter's recipient sits also includes a plant manager for U.S. Steel. Furthermore, to the extent that is the document he argues provides evidence of retaliation, it does not include any mention of Plaintiff's race or any allegation of discrimination based on race. *See* Pl. Ex. A p. 33-37 [DE 35-1].

The Court also notes that it is not apparent what materially adverse action Plaintiff is claiming he suffered as a result of the alleged protected activity. "Federal law protects an employee only from retaliation that produces an injury, and, therefore, an employer's retaliatory conduct is actionable only if it would be materially adverse to a reasonable employee." *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-69 (2006)). Title VII's "anti-retaliation provision does not protect against petty slights, minor annoyances, and bad manners. An employee must suffer something 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Boss v. Castro*, 816 F.3d 910, 918-19 (7th Cir. 2016) (quoting *Hobbs v. City of Chi.*, 573 F.3d 454, 463–64 (7th Cir.2009)). To the extent that Plaintiff is claiming that the incident with the chair was retaliation, throwing away a preferred chair, especially when there are some safety concerns and other available adequate seating options, is not a materially adverse employment action. Although refusing to schedule overtime in certain circumstances may rise to the level of a materially adverse action, in this case Plaintiff has not established that he engaged in any protected activity that was causally linked to the type of overtime denial that is materially adverse.

In short, nowhere in Plaintiff's response to the motion for summary judgment does he identify protected activity or any materially adverse action that is causally connected to the protected

activity. Plaintiff has failed to come forward with specific facts showing that there a genuine issue for trial regarding whether he suffered retaliation for engaging in protected activity. *See, e.g., Basith v. Cook Cty.*, 241 F.3d 919, 933 (7th Cir. 2001).

Defendant also argues that a number of allegations raised by Plaintiff in discovery are time-barred as occurring more than 300 days prior to his EEOC charge. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729-30 (7th Cir. 2014) (quoting 42 U.S.C. § 2000e–5(e)(1)). However, Plaintiff has failed to establish a genuine issue of material fact regarding his claims, as described above, so the Court need not parse out which of them fall within the applicable time period.

## VI. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the Motion for Summary Judgment of Defendant, United States Steel Corporation [DE 29]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant United States Steel and against Plaintiff Rodney Simmons Jr. as to all the claims in his Complaint.

So ORDERED this 11th day of February, 2020.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record